UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| DAVID C. FAULKINGHAM, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil No. 04-48-B-K |
| ) | |
| PENOBSCOT COUNTY JAIL, et al., ) | |
| ) | |
| Defendant ) | |

## MEMORANDUM OF DECISION[1] *ON RON BYRUM'S MOTION FOR SUMMARY JUDGMENT*

David Faulkingham brings this 42 U.S.C. § 1983 action complaining of his treatment at the Penobscot County Jail while he was a pretrial detainee awaiting the resolution of federal criminal charges against him. One of the defendants, Ron Byrum, has filed a motion for summary judgment (Docket No. 94) to which Faulkingham has not responded. Per the reasons set forth below I **GRANT** Byrum's motion.

### *Discussion*

### *Summary Judgment Standard*

Byrum is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and that he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its resolution

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

would "affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.  I review the record in the light most favorable to Faulkingham and I indulge all reasonable inferences in his favor.  See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir.2000) (emphasis added).

The fact that Faulkingham is a pro se plaintiff does not free him from the pleading burden set forth in Rule 56.  See Parkinson v. Goord, 116 F.Supp.2d 390, 393 (W.D.N.Y.2000) ("[P]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment."); see also Sirois v. Prison Health Servs., 233 F.Supp.2d 52, 53-55 (D. Me. 2002).  While Faulkingham's complaint may be held to a less stringent pleading standard under Haines v. Kerner, 404 U.S. 519, 520 (1972), his pro se status does not shield him from Rule 56's operative provision under subsection(e) requiring the pleader to "set forth such facts as would be admissible in evidence."

"By failing to file the required response within the time prescribed by the applicable local rule," Faulkingham has waived "the right to controvert the facts asserted by the moving party in the motion for summary judgment and the supporting materials accompanying it. The court will accept as true all material facts set forth by the moving party with appropriate record support. If those facts entitle the moving party to judgment as a matter of law, summary judgment will be granted."  NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 8 (1st Cir. 2002).

*Eighth Amendment Standard*

The United States Supreme Court has framed the broad outlines of the deliberate indifference inquiry in two cases: Estelle v. Gamble, 429 U.S. 97 (1976) and Farmer v. Brennan, 511 U.S. 825 (1994). Estelle identified in the Eighth Amendment protection the "government's obligation to provide medical care for those whom it is punishing by incarceration." 429 U.S. at 103. The Court observed: "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Id.; see also Helling v. McKinney, 509 U.S. 25, 32, (1993) ("The substantive limits on state action set by the Eighth Amendment," when it "so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs" including food and medical care).

In Farmer the Court more precisely articulated the standard a plaintiff in Faulkingham's shoes must meet to hold a prison official liable for Eighth Amendment claims of this variety. It identified two prongs. The deprivation alleged must be "objectively 'sufficiently serious." ' 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)); Walker v. Benjamin, 293 F.3d 1030, 1037 (7th Cir.2002) ("The deprivation suffered by the prisoner must be objectively sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities," emphasis added). Second, under Farmer, a defendant must have a culpable state of mind, which means that Byrum was deliberate in his indifference to Faulkingham's health or safety. Id.; see also Walker v. Peters, 233 F.3d 494, 99 (7th cir.2000) ("We do not consider what a reasonable doctor would have done. That is an objective test, and Farmer dictated a subjective analysis. Nor is it enough to show that a prison doctor committed malpractice.

At the very least, a prison official must act or fail to act despite his knowledge of a substantial risk of serious harm.") (citations omitted).

### *Undisputed Material Facts*

Ron Byrum is a Licensed Practical Nurse ("LPN") who works under contract with Allied Resources for Correctional Health ("ARCH"), a company that supplies health care professionals to county correctional facilities.  David Faulkingham was an inmate at the Penobscot County Jail ("PCJ") from March 2004 through early August 2004. Faulkingham had served a sentence in the Maine State Prison and had an outstanding warrant in Penobscot County.

### *Medication Confiscation*

When he first arrived at the PCJ, Faulkingham was on two medications: Inderal and Seroquel.  The Inderal was for controlling heart rate and blood pressure and the Seroquel is an antipsychotic.  When Faulkingham first arrived at the PCJ from the State Prison, he was at the PCJ for three days and was then bailed out.  During those three days he received his medication as prescribed because the State Prison had sent a five-to ten-day supply with him.

After he was bailed out, Faulkingham was free for about two weeks before being arrested and taken back to the PCJ.  During the two weeks that he was out of jail, Faulkingham went to his personal doctor and received the prescription medications Inderal, Seroquel, and Valium.

Faulkingham was rearrested on March 18, 2004.  When Faulkingham was returned to the PCJ, he had his medications with him. The medications were confiscated in order to check the validity of the prescriptions (this Faulkingham knew from prior

4

experience would happen). During the March 20 and 21 weekend the office of Faulkingham's doctor was closed and it was not possible to verify the prescriptions. His medications were verified with his doctor's office on Monday, March 22, 2004. Faulkingham's recollection is that within seven days he was back on all three of the medications.

Faulkingham claims that he suffered from anxiety, heart palpitations, increased blood pressure and fever between March 18 and March 25 as a result of not receiving his medications during that period. Faulkingham's medical condition returned to normal when his medications resumed on March 25, 2004.

Byrum and other nurses see inmates daily during a procedure called Med Pass. Med Pass occurs three times a day when the nurses go around and distribute medications to the inmates. During Med Pass the inmates have the opportunity to tell the nurses about any medical problems they have that they believe require emergency treatment. Besides the three times daily Med Pass, the jail also had a Sick Call day once a week. Inmates would put in a request to be seen by the Physicians' Assistant (in this case, Al Cichon), and if the request was granted the inmate would see Cichon on Sick Call day.

During the first week, when he did not have his medications, Faulkingham believes that he saw Byrum on March 20. Faulkingham was aware that Byrum was an LPN who could not prescribe medicine. Faulkingham is critical of Byrum for allegedly not reporting that Faulkingham still had not received his medications and for not reporting that Faulkingham was allegedly suffering symptoms of withdrawal, including experiencing a seizure.

*Shoulder Treatment*

After he injured his shoulder in June, Faulkingham complained that he needed to see a doctor; he voiced this complaint to Vicky Curry (another contracted health worker at the PCJ) and to Byrum. During every Med Pass from June 21 until he left the PCJ, Faulkingham complained about his shoulder and about needing treatment. Faulkingham's chart shows that his shoulder was assessed on June 21, 2004; June 22, 2004; June 25, 2004; June 30, 2004; July 4, 2004; July 6, 2004; July 7, 2004; July 12, 2004; July 13, 2004; July 24, 2004; August 4, 2004; and August 9, 2004. Faulkingham saw Al Cichon on the next Sick Call day after he received his shoulder injury. During the first visit with Cichon after the injury, Cichon prescribed a treatment including taking frequent showers to alleviate joint pain. After the visit where Cichon prescribed the treatment, Faulkingham next saw Cichon on the next Sick Call day. Between the first and second visits with Cichon, Faulkingham complained to Byrum that he was not getting as many showers as he was supposed to get for his treatment and Byrum said that he would try to find out what was wrong. During the same period, Faulkingham complained about his shoulder three times per day during Med Pass, put in written requests to be seen on Sick Call day every week, and filed grievances with the Administration Department of the PCJ. The shift sergeants made the decision as to when and if inmates could take showers. After his second visit with Cichon following the shoulder injury, Faulkingham did not complain to Byrum again.

During the time that he was complaining of not getting enough showers, Faulkingham was in "lockdown mode" for disciplinary reasons. As part of the lockdown restrictions, Faulkingham was not allowed access to the showers throughout the day as he

normally would be. The healthcare providers were not notified by jail officials of Faulkingham's lockdown status.

### *Disposition*

These undisputed material facts demonstrate that Byrum cannot be held liable under the Eighth Amendment for his limited actions vis-à-vis either Faulkingham's temporary medication withdrawal or his shoulder treatment. Byrum's contact with Faulkingham was, on this record, limited and his responsibilities apropos Faulkingham's treatment were narrow. Assuming that Faulkingham's medical conditions were sufficiently serious under Farmer's first prong, I conclude that there is no genuine dispute with respect to the second prong of the Farmer inquiry. In other words, there are no facts in this record from which I can infer that Byrum was deliberate in his alleged indifference to Faulkingham's health conditions.

*So Ordered.*

August 8, 2005 /s/ Margaret J. Kravchuk
U.S. Magistrate Judge