UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| DAVID C. FAULKINGHAM, | ) |
| Plaintiff | ) ) ) |
| v. | )  Civil No. 04-48-B-K |
| PENOBSCOT COUNTY JAIL, et al., | ) ) ) |
| Defendant | ) |

### *MEMORANDUM OF DECISION[1] ON MOTION FOR SUMMARY JUDGMENT BY PENOBSCOT COUNTY JAIL, TY BABB AND LINDA GOLDEN*

David Faulkingham brings this 42 U.S.C. § 1983 action complaining of his treatment at the Penobscot County Jail (PCJ) while he was a pretrial detainee awaiting the resolution of federal criminal charges against him. Three defendants, Penobscot County Jail, Ty Babb, and Linda Golden, have filed a motion for summary judgment (Docket No. 91) to which Faulkingham has not responded. I **GRANT** the unopposed motion for summary judgment motion for the following reasons.

### *Discussion*

### *Summary Judgment Standard*

The defendants are entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

resolution would "affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.  I review the record in the light most favorable to Faulkingham and I indulge all reasonable inferences in his favor.  See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir.2000) (emphasis added).

The fact that Faulkingham is a pro se plaintiff does not absolve him of the pleading burden set forth in Rule 56.  See Parkinson v. Goord, 116 F.Supp.2d 390, 393 (W.D.N.Y.2000) ("[P]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment."); see also Sirois v. Prison Health Servs., 233 F.Supp.2d 52, 53-55 (D. Me. 2002).  While Faulkingham's complaint may be held to a less stringent pleading standard under Haines v. Kerner, 404 U.S. 519, 520 (1972), his pro se status does not shield him from Rule 56's operative provision under subsection(e) requiring the pleader to "set forth such facts as would be admissible in evidence."

"By failing to file the required response within the time prescribed by the applicable local rule," Faulkingham has waived "the right to controvert the facts asserted by the moving party in the motion for summary judgment and the supporting materials accompanying it. The court will accept as true all material facts set forth by the moving party with appropriate record support. If those facts entitle the moving party to judgment as a matter of law, summary judgment will be granted."  NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 8 (1st Cir. 2002).

*Eighth/Fourteenth Amendment Standard for Deliberate Indifference*

Faulkingham faults these defendants for failing to respond to his grievances concerning his medical treatment at the PCJ. As the defendants clarify in their statement of material facts:

> Faulkingham's claim against Penobscot County is:
> > I presented to the medical department with medical problems and it was my opinion that the medical problems were not treated. So, the procedure in jail when you've got a grievance issue is to grieve and the grievances were handled by jail employees representing the Penobscot County Jail. .... The employee's represented themselves through the jail as checking my medical records and making sure that I was given proper treatment. I was denied outside treatment, you know, things of that nature.
>
> David Faulkingham's claim against Ty Babb, is that Babb represented the jail's interest with respect to the medical department, and the claim also relates to how Babb handled Faulkingham's grievances. Faulkingham's claims against Defendant Golden are that she was representing the jail and she answered Faulkingham's grievances as the overseer of medical.

In their motion for summary judgment the defendants have briefed Faulkingham's claims as including a straight-up Eighth/Fourteenth Amendment deliberate indifference claim against Penobscot County Jail, Babb, and Golden, supervisory liability claims against Babb and Golden, and a municipal liability custom and policy claim against Penobscot County Jail.

The United States Supreme Court has framed the broad outlines of the deliberate indifference inquiry in two cases: Estelle v. Gamble, 429 U.S. 97 (1976) and Farmer v. Brennan, 511 U.S. 825 (1994). Estelle identified in the Eighth Amendment protection the "government's obligation to provide medical care for those whom it is punishing by incarceration." 429 U.S. at 103. The Court observed: "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Id.; see also Helling v. McKinney, 509 U.S. 25, 32, (1993) ("The substantive

3

limits on state action set by the Eighth Amendment," when it "so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs" including food and medical care).

In Farmer the Court more precisely articulated the standard a plaintiff situated as is Faulkingham must meet to hold a prison official or entity liable for Eighth Amendment claims of this variety. It identified two prongs. The deprivation alleged must be "objectively 'sufficiently serious.'" 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)); Walker v. Benjamin, 293 F.3d 1030, 1037 (7th Cir.2002) ("The deprivation suffered by the prisoner must be objectively sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities," emphasis added). Second, under Farmer, a defendant must have a culpable state of mind, which means that personnel were deliberate in their indifference to Faulkingham's health or safety. Id.; see also Walker v. Peters, 233 F.3d 494, 99 (7th cir.2000) ("We do not consider what a reasonable doctor would have done. That is an objective test, and Farmer dictated a subjective analysis. Nor is it enough to show that a prison doctor committed malpractice. At the very least, a prison official must act or fail to act despite his knowledge of a substantial risk of serious harm.") (citations omitted).

### *Undisputed Material Facts*

On February 20, 2004, David Faulkingham was brought from the Maine State Prison, where he had just completed a sentence, to the Penobscot County Jail pending charges for trafficking in prison contraband and trafficking of tobacco in an adult correctional facility. Three days later, on February 23, 2004, Faulkingham was bailed

4

from the facility. Faulkingham returned to the Penobscot County Jail on March 18, 2004, on charges pertaining to the distribution of heroin and a violation of bail conditions.

When Faulkingham arrived at the Penobscot County Jail on March 18, 2004, he identified that he had prescriptions for various medications. This information was recorded on the medical screening questionnaire and the information was turned over to the jail's medical provider to verify the need for the medication and, if necessary, to start Faulkingham on a medication distribution schedule.

On March 22, 24, and 25, 2004, Faulkingham submitted grievances pertaining to obtaining his medications. The grievances were passed on to Al Cichon who responded to the administration by indicating that Faulkingham arrived at the jail on March 18, 2004, (Thursday, P.M.) and had noted medications on his history. Attempts were made to verify the medications with the pharmacy during the next forty-eight hours without success. On March 22, the medication was verified and ordered/started. With respect to Faulkingham's complaint that he did not receive medication after returning from court, Cichon noted that the nurse deferred the medication at that time.

Babb and Golden are not medical administrators and thus have no duties with respect to medical administration at the PCJ. With respect to providing medical care to prisoners, Babb and Golden's involvement is that they handle complaints and grievances, which may include complaints about the medical department. Their job is to take the complaint to the medical provider for an explanation and make sure there is a conclusion to the request or grievance.

Based upon the information provided by the medical department, Golden responded to the three grievances on March 30, 2004, noting for Faulkingham: "Medical

5

reports that they were unable to verify your medications with the pharmacy until March 22, 2004. At which time the order was started. Due to the time of the day you returned from court, your meds were deferred. Your other medical issues are being reviewed."

On April 27, 2004, Faulkingham submitted a grievance indicating that he had unresolved health issues. Golden responded to this grievance indicating that medical had reported that Faulkingham was receiving treatment, that Faulkingham had refused a physical, and that he had not submitted any medical requests to them. The information provided in response to this grievance was the result of information provided by Cichon to the jail administration on April 30, 2004, in which Cichon advised that Faulkingham was receiving treatment, was being evaluated for health issues, refused to attend clinic for a physical, and had not submitted a medical request.

On May 5, 2004, Faulkingham submitted a three-page grievance following up on his April 2, 2004, grievance regarding his medical care. Babb responded to this grievance indicating that it was a repeat grievance and that the first grievance had been answered by the physician assistant. Babb further responded that he had spoken to the physician assistant and had been told that Faulkingham's records had been sent for at the prison. Babb went on to advise Faulkingham that his lab work had been sent out and had come back negative.

Faulkingham submitted a grievance on May 10, 2004, which references the grievance dated May 5, 2004. In this grievance, Faulkingham states that the physician assistant was looking in the wrong direction for his records and that he had been told many times to go to Hancock County Jail. This grievance was referred to Cichon who advised the jail administration that the medical office has looked in every place that

6

Faulkingham has provided as a source of his medical records and that using grievances to communicate with medical is an abuse of the grievance process. As a result of this information from Cichon, Golden responded to Faulkingham's grievance indicating: "Medical reports that they have contacted every place you named as a source for medical records, they further report that the subject of this grievance appears to be a communication of information which does not raise a grievable issue."

On May 29, June 2, and June 4, 2004, Faulkingham submitted three grievances concerning his medical care. These grievances were all sent to the medical provider and responded to by Cichon who advised the administration:

> Mr. Faulkingham has submitted several grievances regarding the same subject – many of these seem to be "in place of" a medical request. He has submitted several medical requests and these have been repeated missives regarding issues that have already been addressed. Mr. Faulkingham has also been advised that his test results were – normal for the EKG. The laboratory results have not been received and we have called for them. Mr. Faulkingham will be "seen" (as he has been advised) when we have all the results – he was not told that he would be seen the next week. He asked if he would be told the results of the testing – to which I replied "of course". Mr. Faulkingham is not being ignored nor are we failing to provide him with appropriate care. To date, we have not been able to substantiate all of his reported conditions/illnesses nor has any testing revealed a serious condition. The evaluation/monitoring process will continue with prudent dispatch despite Mr. Faulkingham's assertion to the contrary.

Based upon this information, Golden reported to Faulkingham in response to these three grievances that Faulkingham had submitted grievances in place of medical requests and that he had been given the results of his tests as they have been received. Further, Golden indicated that medical had been unable to substantiate his reported condition and they would continue to monitor and evaluate.

On June 30, 2004, Faulkingham filed a grievance regarding medical issues and the fact that Cichon was overseeing his medical needs. Faulkingham's grievance was that

7

only specialist in the field of medicine had overseen physician assistants that had seen him in the past and he wanted to know the identity of Cichon's supervisor. He also asked that he be allowed to see this person or a doctor. On July 2, 2004, Cichon responded to the administration regarding this grievance by indicating with respect to Faulkingham being seen by specialists that, although this may be Faulkingham's druthers, this type of approach is not "medically necessary." Further, Cichon indicated that Faulkingham has been carefully assessed for each of his complaints and concerns, had been tested to the degree necessary, and a review of Faulkingham's records has been accomplished. Cichon stated: "At this time the Medical Department cannot support a specialty referral."

Based upon the information provided by Cichon, Golden responded to Faulkingham on July 8, 2004, indicating that she had reviewed his medical file and spoken to the medical provider regarding his medical situation. The administration, Golden informed Faulkingham, had come to the conclusion that the appropriate medical care has been provided but, if Faulkingham desired another opinion, he could select a medical provider and be responsible for all costs associated with the service provided (including prepaid transportation and medical services). Additional care provided to Faulkingham had to be coordinated through the jail medical provider.

On July 8, 2004, Faulkingham wrote a letter to Golden complaining about her statement that she had reviewed his medical records. Faulkingham was asserting that the records were privileged and that Golden did not have authority to view the medical records. The second issue raised by Faulkingham in his July 8 letter was to advise the jail that they need to go to the United States Marshal's Office to get payment for his outside doctor. Faulkingham stated that he would not pay for a doctor and claimed that the jail

8

was trying to get payment twice for his medicals. In response to this letter Golden wrote to Faulkingham on July 9, 2004, explaining that, according to the Attorney General's Office, inmate medical records are the property of the facility where the inmate is housed. Golden also advised Faulkingham that the United States Marshal's Office had been contacted about Faulkingham's request for a second opinion and their position was that if Faulkingham was paying 100 percent of the cost involved in getting the second opinion then they had no objection.

On July 6, 2004, Faulkingham submitted a grievance indicating that he had a shoulder injury from an altercation which occurred on June 21, 2004. He further represented that he had a liver malfunction and he could not take massive amounts of Ibuprofen or aspirin. Faulkingham claimed that Cichon told him that he could have up to six months of pain and Faulkingham pressed that he needed relief to stop his suffering. The grievance was referred to medical and an unsigned response dated July 9, 2004, was provided to the administration. This response states that Faulkingham had been evaluated several times for this complaint and offered appropriate treatment. Faulkingham was advised that muscular injuries can take up to six to eight weeks to resolve, there may be some residual symptoms over a longer period, and that it appeared that Faulkingham did not accurately understand/report the interaction. In response to this information, Golden responded to Faulkingham's grievance noting that medical reports that he had been evaluated several times for his complaint and he had been offered appropriate treatment.

Faulkingham submitted two grievances on July 24, 2005, and a third grievance on July 28, 2004, regarding not receiving the hot packs and showers three times a day for his shoulder, treatment prescribed by Cichon. In response to these three grievances, Cichon

9

authored a memo to the administration dated August 1, 2004, identifying that the medical office was unaware that Faulkingham could not access liberal showers as he was in lock-up but that additional showers were not critical to the resolution of his condition. As for the issue of the moist heat, Cichon noted that moist heat was suggested as a complimentary treatment to rest and anti-inflammatory medications. "Although the moist heat may be supportive to a musculoskeletal injury," Cichon reported, "it is not 'necessary.'" Cichon went on to explain that a majority of the injuries of the type Faulkingham had responded best to time. Based upon the information provided by Cichon, as well as a meeting between Golden, Cichon, and Faulkingham, Golden responded to the grievance indicating they had met with Faulkingham on July 30, 2004. It was determined at that meeting that Cichon did not know Faulkingham was in lock-up and limited to one shower per day. Golden went on to explain: "You are now out of lockup and have access to more showers and have been authorized an extra mattress." On August 6, 2004, Faulkingham left the Penobscot County Jail, and was transferred to the custody of the Cumberland County Jail.

      Penobscot County Jail Policy F-310 sets forth the jail's policy for providing medical services to inmates in the custody of the jail. As part of the process for implementing the policy in the jail, it must be submitted to the Maine Department of Corrections for administrative review to ensure that the policy complies with the Maine standards for correctional facilities and jails. Policy F-310 has been ratified by the Maine Department of Corrections. Pursuant to Penobscot County Policy F-310, personnel of the Penobscot County Sheriff's Department will not refuse or hinder an inmate's right to medical services or care, diagnose or treat an inmate's illness, and/or impose restrictions

on the healthcare clinic personnel pertaining to the practice of medicine/nursing other than regulations necessary to ensure security.

### *Discussion*

The record before certainly demonstrates that Faulkingham and these defendants had a disagreement about the adequacy of his medical treatment and that Babb and Golden were apprised of Faulkingham's discontent.  However, inmates do not have a right to limitless doctor visits or their choice of medications, and negligence and medical malpractice are not actionable, see Daniels v. Williams, 474 U.S. 327 (1986) (noting that 42 U.S.C. § 1983 provides a right of action for civil rights violations and cannot be used to sue correctional officials for negligence), and the defendants have set forth facts that support a conclusion that the care provided Faulkingham was constitutionally adequate. As Faulkingham has failed to controvert the defendants' statement of material fact he has not created a genuine dispute of fact to foreclose summary judgment on the question of whether the level of care provided to Faulkingham passes muster under a Farmer inquiry. And without an underlying constitutional violation the defendants cannot be held liable individually on a supervisory theory or on a policy and custom theory. See Wilson v. Town of Mendon, 294 F.3d 1, 6 -7(1st Cir. 2002); see also Bowman v. Corrections Corp. of America, 350 F.3d 537, 544-47 (6th Cir. 2003).

### *Conclusion*

For these reasons I **GRANT** the motion for summary judgment filed by Penobscot County, Ty Babb, and Linda Golden.

*So Ordered.*

August 10, 2005                    /s/ Margaret J. Kravchuk
                                   U.S. Magistrate Judge